**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

|  |  |
|---|---|
| VANYA S. P.,<br><br>            Plaintiff,<br><br>      v.<br><br>FRANK J. BISIGNANO,<br>Commissioner of Social Security,<br><br>            Defendant. | No. 2:25-cv-04674-BFM<br><br>**MEMORANDUM OPINION AND ORDER** |

This case is before the Court for review of the decision of the Administrative Law Judge denying Plaintiff's applications for Social Security benefits. For the reasons discussed below, Plaintiff's request for remand (ECF 11) is granted and the decision of the Commissioner is reversed.

## I.    PROCEDURAL HISTORY

On February 21, 2019, Plaintiff Vanya S. P.[1] applied for Disability Insurance Benefits, alleging disability with an onset date of February 19, 2016. (Administrative Record ("AR") 193-94, 224.) Plaintiff's application was denied

---

[1]  In the interest of privacy, this Memorandum Opinion and Order uses only the first name and middle and last initials of the non-governmental party in this case.

at the initial level of review and on reconsideration, so she requested a hearing before an Administrative Law Judge. (AR 54-85, 99-100.)

On May 26, 2021, an ALJ held a hearing and heard from Plaintiff and a vocational expert. (AR 35-53.) After considering the evidence, the ALJ issued an unfavorable decision, finding Plaintiff retained a residual functional capacity ("RFC")[2] for a range of sedentary work, which would permit her to perform jobs existing in significant numbers in the national economy. (AR 16-28.)

After the Appeals Council denied Plaintiff's request to review the ALJ's decision (AR 926-32), Plaintiff' appealed the denial of benefits to this Court. *See Vanya [S. P.] v. Kijakazi*, No. 2:22-cv-07492-DSF-JEM. (AR 933-36, 939-40.) The parties stipulated to remand the case for further administrative proceedings. (AR 941-50.) The Appeals Council then vacated the final decision and remanded the case to an ALJ to give Plaintiff an opportunity for a hearing, to evaluate the medical source opinions and prior administrative medical findings (particularly those concerning Plaintiff's handing and fingering limitations), and to issue a new decision. (AR 953-54.)

On December 13, 2023, the same ALJ held a second hearing and took testimony from Plaintiff and a vocational expert. (AR 888-903.) After considering the updated evidence, the ALJ issued a second unfavorable decision, again finding Plaintiff was not disabled from the February 2016 alleged onset date through the December 2022, date last insured. (AR 861-76.) The ALJ found at step two of the disability analysis[3] that Plaintiff suffered from the following severe impairments: left shoulder degenerative joint disease, cervical

---

[2] A RFC is what a claimant can still do despite existing exertional and nonexertional limitations. *See* 20 C.F.R. § 404.1545(a)(1).

[3] A five-step evaluation process governs whether a claimant is disabled. 20 C.F.R. § 404.1520(a)-(g)(1). Only the steps relevant to the issues raised are discussed herein.

degenerative disc disease, bilateral carpal and cubital tunnel syndromes, bilateral knee degenerative joint disease, and right foot plantar fasciitis. (AR 864-65.) The ALJ found that through the date last insured, Plaintiff retained a RFC for light work as defined in 20 C.F.R. § 404.1567(b), limited to: (1) frequent postural activities; (2) occasional climbing of ladders, ropes, or scaffolds; (3) occasional bilateral overhead reaching; (4) left side above-the-shoulder lifting, pushing, and pulling of ten pounds; and (5) frequent handling and fingering. (AR 865-75 (discounting Plaintiff's allegations of greater limits).) At step four, the ALJ found Plaintiff would be able to perform her past relevant work as a stock supervisor as generally performed. (AR 875-76 (adopting vocational expert testimony at AR 900-01).)[4]

The Appeals Council declined review in Plaintiff's case, making the ALJ's March 13, 2024, decision the final decision of the agency. (AR 851-54, 1023-34.) Dissatisfied with the agency's resolution of her claim, Plaintiff filed a Complaint in this Court. For the reasons set forth below, the Court finds the ALJ's decision should be **reversed** and this matter remanded for further administrative proceedings.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to deny benefits to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence. . . is 'more than a mere scintilla.' It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to

---

[4]  Plaintiff's past relevant work as a stock supervisor as generally performed per the Dictionary of Occupational Titles ("DOT") required frequent handling and fingering. *See* Stock Supervisor, DOT 222.137-034, 1991 WL 672071.

support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-21.

## III.   DISCUSSION

Plaintiff raises three issues with respect to the ALJ's decision: (1) that the ALJ's RFC limitation to frequent (versus occasional) handling and fingering is not supported by substantial evidence; (2) that the ALJ failed to articulate legally sufficient reasons for rejecting Plaintiff's testimony; and (3) that substantial evidence does not support the ALJ's step four finding because Plaintiff's past relevant work did not match Dictionary of Occupational Titles job the vocational expert relied on. (ECF 11 at 14-24; ECF 18 at 2-9.) Having reviewed the entire record, the Court agrees that the ALJ provided insufficient reasons for discounting Plaintiff's symptom testimony, and remands on that basis. It therefore declines to address the remaining two issues.

### A.   The ALJ's Reasoning for Discounting Plaintiff's Subjective Complaints is Inadequate

Plaintiff argues that the ALJ's reasoning for discounting Plaintiff's subjective complaints suggesting greater RFC limitations than the ALJ adopted was inadequate. (ECF 11 at 18-22; ECF 18 at 6-7.) The Court agrees.

#### 1.   Legal Framework

Where a claimant testifies about subjective medical symptoms, an ALJ must evaluate such testimony in two steps. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying

impairment that could "reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted).

Second, if the claimant meets that first standard and there is no evidence of malingering, the ALJ can reject the claimant's testimony only by offering "specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation marks omitted). An ALJ "is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). At the same time, when an ALJ rejects a claimant's testimony, he must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record," to support that determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). General or implicit findings of credibility will not suffice; the ALJ must show his work. *Smartt*, 53 F.4th at 499; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

The sufficiency of the explanation should be judged in light of its purpose—ensuring that this Court's review is "meaningful." *Brown-Hunter*, 806 F.3d at 489. That is, the explanation must be "'sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony[.]'" *Id.* at 493 (citation omitted).

Judged by that standard, the ALJ's reasons and explanation for discounting Plaintiff's subjective complaints were inadequate.

### 2.    Plaintiff's Testimony

In a March 2019 Function Report form, Plaintiff complained primarily of upper extremity pain, numbness, and stiffness, causing difficulty lifting,

reaching, using her hands; she also alleged walking, sitting and standing limitations. (AR 249-56.) She estimated she could walk a few blocks before needing to rest for a few minutes, could stand/walk/sit/climb stairs for 30 minutes or less, "some days more," and could lift/reach/use her hands for "very short times if at all." (AR 254.)

At the May 2021 hearing, Plaintiff testified that she had constant pain limiting her daily activities. (AR 40-42, 44-45.) She had neck pain that radiated to her shoulder and down her right arm. Plaintiff was seeing a physical therapist, doing acupuncture, and taking Gabapentin and Meloxicam for inflammation. (AR 45.) She had tingling, numbing, and weakness in her hands and arms, and sharp elbow pain limiting how long she could bend her elbow. (AR 43, 48.) When her neck and shoulder tightened, her arm would feel heavy, which would affect her hips, knees, and foot. (AR 45.) She also had a bone spur in her foot. (AR 47.) Plaintiff claimed she could not type or write for more than 10 minutes without getting swelling, aching, and pain in her hands. (AR 43-44, 48.) She could not lift more than 15 pounds, and she could not carry things in her hands all the time as she did in her prior job. (AR 44-45.) Due to stiffness and pain, she could walk up to 30 minutes at a time, stand up to two hours at a time, and sit up to an hour and a half at a time while frequently shifting her weight and position. (AR 47.) She did not think she could sit, stand and walk for six or more hours in an eight-hour workday. (AR 47.) She said some days she has to lie down for 45 minutes to an hour due to fatigue, or longer if she has not been sleeping. (AR 46.)

At the December 2023 hearing, Plaintiff testified that since the prior hearing she had worsening left foot pain and stiffness from plantar fasciitis which limited her to standing no more than five minutes before needing to relieve the pressure on her foot, and to minimal walking (*i.e.*, a "very short distance," such that in walking from her front door to her driveway she would

6

have to stop at least once to relieve the pressure on her foot). (AR 893-94.) She still had numbness in her fingers, and her doctors were determining whether her neck was the source of the issues. (AR 895.) She had been getting neck injections to help alleviate her pain and stiffness, and she had issues with getting insurance approval for radiofrequency treatments to try to alleviate her neck pain. (AR 897.) Plaintiff testified that both consultative examinations lasted less than five minutes and that the examining doctors had not touched her or examined her feet. (AR 898.) Plaintiff was not asked to estimate her upper extremity or sitting abilities and limitations at the most recent hearing. (AR 894-98.)

Plaintiff reported she started working again in August 2023, as a remote dispatcher for an exterminating company, doing scheduling, new customer entry, and email billing. (AR 1090.) At the hearing, she explained that her new work was not "formal"—she was working for a friend answering calls and doing other tasks once a month. (AR 893.)[5]

### 3.   The ALJ's Decision

In determining Plaintiff's RFC, the ALJ summarized Plaintiff's testimony and found that her statements concerning the intensity, persistence and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 865-67.) The ALJ acknowledged that the record reflected "documentation of the claimant's reported pain symptoms related to the left shoulder, neck, bilateral hands/wrists, and the bilateral lower extremities, with

---

[5] The disability period at issue is from the February 19, 2016, through December 31, 2022. (AR 876.) For Plaintiff to be entitled to a disability insurance benefits, she had to show she became disabled on or before December 31, 2022. (AR 862.) Plaintiff admits that with treatment her condition eventually improved such that she could return to some work in August 2023. (*See* ECF 11 at 17; ECF 18 at 6-7.) This concession does not foreclose the possibility that Plaintiff is entitled to a closed period of disability benefits.

7

diagnoses, objective medical findings, and treatment related to degenerative joint disease of the left shoulder, degenerative disc disease of the cervical spine, bilateral carpal and cubital tunnel syndromes, degenerative joint disease of the bilateral knees, and right foot plantar fasciitis." (AR 867-69 (citing AR 323-24, 440-41, 464, 467, 633-34, 660-61, 772 (objective evidence of Plaintiff's left shoulder issues and treatment including arthroscopic surgeries); AR 452, 633-34, 660-61 (objective evidence of Plaintiff's carpal and cubital tunnel syndrome and related surgeries); AR 629-34 (objective evidence of mild bilateral adhesive capsulitis in both shoulders, right knee torn medial meniscus, and right plantar fasciitis); AR 467, 772, 792 (objective evidence of Plaintiff's multilevel degenerative disc disease, including moderate central canal stenosis at C6-C7); AR 650-66 (Dr. Jon Greenfield's evaluation noting pain complaints and reduced cervical and left shoulder range of motion and reduced grip strength).)

Nevertheless, the ALJ found that Plaintiff's claims about the severity of her functional limitations was "not indicated by the medical record." (AR 867.) Rather, the record was "consistent with the [ALJ's RFC] determination." (AR 867.) The ALJ noted that (1) the medical record demonstrated "appropriate specialized medical treatment involving surgical interventions" which appeared to have "improved and stabilized her pain symptoms," resulting in "objective medical abnormalities of generally mild-to-moderate severity after surgical interventions" and "routine treatment recommendations"; (2) the two consultative examinations "demonstrated only a few clinical findings, indicative of lesser severity of symptoms than as alleged"; (3) Dr. Greenfield's orthopedic evaluations "demonstrated functional capacities that were generally consistent with" the state agency physicians' opinions and the consultative examiners' opinions; and (4) although Plaintiff alleged significant standing and walking limitations from left foot pain, there was no evidence that an assistive device

was medically necessary. (*See* AR 867-71 (discussing the medical record supporting each reason).)

### 4.    Analysis

The ALJ's reasons for discounting Plaintiff's testimony generally fit into two categories: (1) medical evidence that, in the ALJ's view, undermined Plaintiff's testimony; and (2) effective treatment that had controlled Plaintiff's symptoms. (AR 867-71.)

### a.    Medical Evidence

The ALJ pointed to several data points suggesting he viewed Plaintiff's testimony as not fully consistent with the medical evidence in the record. (AR 867-71.) On review, these data points do not provide substantial evidence to support his conclusion.

As an initial matter, the ALJ's explanation on this point does not meet the standard set by the Ninth Circuit. An ALJ is required to "identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (emphasis added). In this case, however, the ALJ merely summarized Plaintiff's medical records and concluded that they were consistent with the assessed RFC. (AR 867-71.) Under Ninth Circuit precedent, such analysis is inadequate. *See Brown-Hunter*, 806 F.3d at 494 (criticizing ALJ for doing nothing more than stating her conclusion concerning the claimant's credibility and then summarizing the medical evidence that supported her RFC determination).

Indeed, the only area in which the ALJ linked specific testimony to specific medical evidence was Plaintiff's testimony about standing and walking limitations caused by left foot pain. The ALJ noted that the medical record "demonstrate[ed] no evidence of medically necessary use of an assistive device." (AR 867.) As a reason to reject testimony, though, this one is hardly convincing:

9

Plaintiff never claimed she needed an assistive device for her foot pain. Instead, she claimed she needed to get off her foot entirely to relieve pressure. (AR 894.)

Even if the Court were to overlook the ALJ's failure to adequately explain his reasons, his implicit reasoning lacks the support of substantial evidence. An ALJ is not permitted to cherry pick those records which support his conclusion and ignore those records that undermine his conclusion. *Holohan*, 246 F.3d at 1207-08 (finding that an ALJ erred in selectively relying on some entries in a plaintiff's records while ignoring others). While the ALJ cited several records that he believed undermined Plaintiff's allegations, the broader record does not support that conclusion. (*See* AR 867-71.)

Plaintiff alleged an onset date in 2016, with a date last insured of 2022. Plaintiff had several surgeries early in that period, including left shoulder surgeries in April 2016 and November 2017, and left carpal and cubital tunnel release surgery in July 2017, and right carpal and cubital tunnel release surgery in January 2019. (AR 867-68 (citing AR 441, 452, 464-65, 467, 633-34, 660-61).) The ALJ cited two records that discussed Plaintiff's pain levels during the early part of the period: (1) Dr. Greenfield's August 2018 evaluation noting that Plaintiff had moderately severe pain in her neck and upper extremities (AR 868 (citing AR 650-63)) and (2) Dr. Harlan Bleecker's May 2019 evaluation noting that Plaintiff had continued neck and upper extremity pain and numbness with related findings of tenderness and some lost sensation (AR 868-69 (citing AR 629-34)). These notes hardly support the ALJ's conclusion that Plaintiff's pain and symptoms stabilized during this period.

The ALJ cited other records from this period, and they do not support his conclusion either. (*See, e.g.,* AR 483 (February 2017 note indicating continued radiating pain down Plaintiff's arm as well as examination findings showing weakness and tenderness); AR 574-76 (September-October 2017 notes indicating Plaintiff complained of left shoulder pain and had tenderness,

10

weakness, mild impingement, and paresthesias on examination); AR 467-68 (March 2018 examination findings showing limited range of motion, paresthesias to ulnar digits, left elbow tenderness); AR 784-85 (November 2019 report noting Plaintiff complained of loose shoulders, persistent pain and popping, and moderate bicep pain, left elbow pain, right wrist pain, and some finger numbness, with examination showing paresthesias to ulnar digits and left elbow tenderness); AR 1349-50 (September 2020 left and right shoulder x-rays showed chronic deformity change to the clavicle from prior trauma, with chronic AC separation and soft tissue calcification in the left shoulder, and minimal nonerosive arthritis of the AC joint in the right shoulder).)

The record does reflect some more positive notes later in the alleged disability period. For example, the ALJ pointed to Dr. Erik Dworsky's January 2021 note reporting pain, numbness, and tingling, but also mild relief with ice, a TENS unit, Meloxicam, and Gabapentin. (AR 869 (citing AR 790-92).) The ALJ reasoned that, from January 2021 through July 2021, the medical record demonstrated "generally stable symptoms" and "routine treatment recommendations" for physical therapy, an over-the-counter knee sleeve, home exercise, icing, and more consistent use of Gabapentin. (AR 869.) But even then, Dr. Dworsky's treatment notes as a whole tell a different story:  he noted that Plaintiff had "gradually worsening symptoms in her neck and bilateral knees" despite treatment, and recommended that Plaintiff start with conservative treatment to address these new issues. (AR 792.) In July 2021, Plaintiff reported a sudden flare-up in pain that left her largely bed-bound, and Dr. Dworsky referred Plaintiff to pain management for possible epidural steroid injections. (AR 1135-37.) By September 2022, Dr. Dworsky admitted that conservative treatment for Plaintiff's knee and back pain had failed. (AR 1151-54.)

Some more positive records followed later in 2021. (*E.g.* AR 870 (citing AR 1098-1100) (treatment notes from Dr. Minkoff showing intact sensation, full

11

motor strength, and pain reduction from a cervical facet joint injection); AR 870 (citing AR 1107, 1189, 1192) (Dr. Minkoff's and Dr. Dworsky's office treatment notes from May, July and August 2023—after the date last insured—when Plaintiff's neck and hand symptoms had concededly improved).) At most, such evidence suggests that some of Plaintiff's impairments may have improved before Plaintiff's date last insured, or that she had cycles of improvement and deterioration during the six-year period the ALJ considered. They cannot support a finding that Plaintiff's subjective testimony can be rejected across the board.

Defendant casts this as Plaintiff asking the Court to reweigh the evidence and ignoring the standard of review. (ECF 17 at 11, 16.) Not so: the Court is required to ensure that the ALJ does not support his conclusion with cherry-picked evidence. *Holohan*, 246 F.3d at 1207-08. Because he did so here, the ALJ erred.

### b.    Effective Treatment

The ALJ also reasoned that Plaintiff's symptoms had stabilized through conservative treatment. (AR 867-71.) Evidence suggesting a claimant's symptoms are managed or improve with treatment can be a clear and convincing reason for rejecting disabling symptomatology. *See Lapuzz v. Berryhill*, 740 F. App'x 596, 597 (9th Cir. 2018) ("effectiveness of medication is a clear and convincing reason to discredit claimant testimony") (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008)); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *Brown v. Comm'r of Soc. Sec.*, 2021 WL 4078015, at *17 (E.D. Cal. Sept. 8, 2021) (that claimant's pain was reported

to be well-managed and improved with medication is a clear and convincing reason to reject pain testimony).

Here, Plaintiff admits that her symptoms improved to the point she could resume some work in August 2023—after extensive treatment including three left shoulder surgeries, bilateral carpal and cubital tunnel release surgeries, physical therapy, acupuncture, casting Plaintiff's wrist, and eventually pain management including epidural and trigger point injections. *See* ECF 11 at 17; ECF 18 at 6-7. But as discussed above, it is far from clear when Plaintiff's symptoms improved. Around the February 2016 alleged disability onset date, Plaintiff had tried and failed multiple courses of cortisone injections and physical therapy. She had continued tenderness in her shoulder and cubital tunnel, limited range of motion, 4/5 motor strength in her supraspinatus muscles, positive impingement tests and Tinel's signs over the cubital tunnel, and decreased sensation in the left ulnar nerve. (AR 412-15.) Throughout the record, there is evidence of insufficiently controlled symptoms with some moments of minor improvement. (*See, e.g.,* AR 519-21 (May 2015 report indicating "significant residual symptoms" after 2013 arthroscopic surgery); AR 574-77 (September and October 2017 reports indicating Plaintiff still had tenderness, weakness, mild impingement, and paresthesias following July 2017 left carpal and cubital tunnel release surgery and multiple cortisone injections, and was a candidate for a "possible [surgical] redo" as well as left shoulder PRP injections); AR 467-68 (March 2018 examination findings showing limited range of motion, paresthesias to ulnar digits, left elbow tenderness despite November 2017 left shoulder arthroscopic surgery and injections); AR 548-50 (January 2019 right carpal and cubital tunnel release surgery); AR 619-22 (March 2019 right shoulder injection gave 50 percent relief in left/right shoulder and back pain); AR 781 (December 2019 report where Plaintiff complained that her right shoulder had not improved and felt like it was shifting in the socket, her left

13

shoulder felt like it was worse, and her left elbow and wrist pain were persistent).) On this record, effective control of symptoms was not an adequate reason to discount Plaintiff's symptoms testimony throughout the period.[6] *Warre*, 439 F.3d at 1006.

For the foregoing reasons, the Court finds inadequate the ALJ's reasoning for discounting Plaintiff's subjective statements.

## IV.   REMEDY

Remand (as opposed to an outright grant of benefits) is appropriate as the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1101, n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments, which can be addressed, as necessary, on remand. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we

---

[6] The ALJ's appears to have correctly found that Plaintiff's standing and walking limitations were sufficiently contradicted by the conservative treatment of icing, stretching, injections, and immobilization; expected duration of less than 12 months; and inconsistency between abnormal podiatry findings and generally normal podiatry records is supported by the record. (AR 871 (citing AR 1220-21, 1371-1400 (podiatry records); AR 1250, 1252, 1256 (Dr. Minkoff's notes reporting normal/stable non-antalgic gait).) But this was only one part of Plaintiff's alleged limitations, and the ALJ failed to adequately address the others in discounting her symptoms testimony.

14

remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## V.    CONCLUSION AND ORDER

For all the foregoing reasons, IT IS ORDERED that: (1) the decision of the Commissioner is **reversed**, and this matter is **remanded** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order; and (2) Judgment be entered in favor of Plaintiff.

DATED: May 5, 2026                    _____

BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE

15